**In re James Roy WORTH, Debtor.**

**Bankruptcy No. 288-20027-7.**

United States Bankruptcy Court,
N.D. Texas,
Amarillo Division.

June 13, 1989.

Mallory G. Holloway, Amarillo, Tex., for debtor.

Phil Jordan, Amarillo, Tex., for Rogers.

E.P. Bud Kirk, El Paso, Tex., amicus curiae.

## MEMORANDUM OF OPINION ON MOTION TO AVOID JUDICIAL LIEN

JOHN C. AKARD, Bankruptcy Judge.

James Roy Worth (Debtor) seeks to avoid the lien held by his former wife, Lois Rogers (Rogers), which she obtained in connection with their divorce. He asserts that the lien is a judicial lien which impairs his exempt property and, thus, is avoidable under § 522(f)(1) of the Bankruptcy Code.[1]

### FACTS

The Debtor and Rogers were married on November 2, 1962. During the marriage they purchased, owned and operated Accent Cleaners in Amarillo, Texas. The Debtor still operates the business.

The Debtor filed for divorce on December 16, 1986, in the District Court for Randall County, Texas, Cause No. 29,609–A. On August 26, 1987, the court heard the matter and granted the divorce. The Decree, dated October 9, 1987, awarded the Debtor (the Petitioner) various items of property, including the following:

All interest of the parties in Accent Cleaners, 613 W. 10th, Amarillo, Texas, including the building, land, and all equipment located therein, subject to the lien granted in favor of Respondent to secure payment to her of the note hereinafter awarded to her from Petitioner.

The Decree awarded various property to Rogers (the Respondent), including the following:

The sum of $18,500.00 to be paid by Petitioner to Respondent in 60 monthly installments, with interest thereon at the rate of 8%, evidenced by a note dated as of the date this Decree is signed, and monthly payments beginning 30 days from the date this Decree is signed, and secured by a deed of trust lien on all land, improvements, and equipment of Accent Cleaners.[2]

The Decree further ordered both parties to "execute all instruments necessary to effect this decree...." On December 2, 1987, Rogers' attorney made written demand on the Debtor to execute the documents called for in the decree. To date, the Debtor has not signed them.[3]

On January 25, 1988, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code. The schedule of exemptions (Schedule B–4) filed with the petition claimed no portion of Accent Cleaners as exempt. An amended schedule, filed February 2, 1988, claimed the business property at 613 W. 10th Street, Amarillo, Texas, as exempt and valued it at $65,000.00. It scheduled the office equipment and separately valued it at $500.00. On April 14, 1988, the Debtor filed a second amended claim of exemptions which claimed the business property as exempt, valued it at $47,154.00, and continued to claim exemption for $500.00 worth of office equipment. The Debtor's original schedule of creditors holding security (Schedule A–2) showed a creditor having a lien on real estate valued at $65,000.00. The lien was scheduled at $44,231.71. Apparently, this is the land on which the cleaning establishment is located. The same schedule listed a lien on business equipment for $13,992.38 and valued the equipment at $7,000.00. Rogers' lien was listed as $18,500.00, secured by the real

1. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are to sections in the Bankruptcy Code.

2. A deed of trust is the Texas form of mortgage on real estate. The proposed documents were not introduced into evidence. Presumably the state court intended the wording of the deed of trust to be broad enough for it to be a security agreement on the personal property, as well as a

mortgage on the real estate. For purposes of this opinion, the Court assumes that the state court judgment was sufficient to place a judicial lien on the real and personal property.

3. If the Debtor had signed the deed of trust as directed by the state court, the lien would not be considered consensual and would still be classified as a judicial lien.

estate, with the value of the collateral shown as $72,000.00.

On April 13, 1988, the Interim Trustee, H. Bryan Poff, filed his Section 341 Meeting Minute Sheet & Exempt Property Report. The report stated that on March 14, 1988, the Debtor appeared at the § 341 meeting of creditors and was examined. The meeting was continued to April 18, 1988. The report does not state whether the Trustee would object to the exemptions claimed by the Debtor. The Trustee filed no minute sheet of the continued meeting. No one filed objections to the claimed exemptions.

On June 9, 1988, the Debtor filed his motion to avoid Rogers' lien asserting that it constituted a judicial lien impairing his exemption and, therefore, could be avoided under § 522(f)(1).

## DISCUSSION

### State Law

■ In his article *Family Law: Husband and Wife*, 38 S.W.L.J. 131 (1984), Professor McKnight states:

> Texas Courts have generally acknowledged that in a suit for divorce a lien may be placed upon a spouse's homestead in order to secure the payment of a money judgment awarded to the other spouse for his or her homestead interest. Such a lien is permissible because it amounts to one for purchase money (footnotes omitted). *Id.* at 154.

Texas divorce courts are given an express mandate to divide the property of the parties in a manner the court deems just and right. Tex.Fam.Code Ann. § 3.63 (Vernon Supp.1989). In Texas it is settled that the homestead is subject to division on divorce, and there is no legal prohibition against awarding the wife a judgment for a sum of money found by the court to represent the fair value of her interest in the homestead awarded to the husband and, also, to grant the wife a lien on the husband's property to secure the payment of her fair portion of the homestead. *Brunell v. Brunell*, 494 S.W.2d 621, 623 (Tex.Civ. App.—Dallas 1973, no writ). In *Brunell*,

the appellate court expressly approved the trial court's award of the homestead to the husband and the lien award to the wife representing her portion of the equity in the real property. However, the court denied a lien on the homestead for amounts owed by the husband to the wife for her attorney's fees and past due alimony payments. *Id.* at 623.

The facts in *Lettieri v. Lettieri*, 654 S.W.2d 554 (Tex.App.—Fort Worth 1983, writ dism'd) are almost identical to those of this case. The *Lettieri* Court said:

> At the moment of divorce her ownership in the property was converted, and she lost the value of the same and received back as compensation a money judgment for such value. The judgment specifically created her lien on the property. This is not a case where she was awarded a promissory note with certain payments to be made monthly and the right to foreclose upon the property for the failure to make such payments. Nor is this a case where the property was the separate property of the husband before the marriage and she has been granted a lien against his separate property to pay her community claim. This presents a situation where the husband was awarded the use, occupancy, title and possession of the home and other property by the court, and the wife was awarded a money judgment as compensation for her interest in that property.
>
> It is clear that homestead property is exempt from a money judgment in a divorce decree. However, in a divorce action a lien may be placed upon a spouse's real property homestead to secure the payment of the amount awarded to the other spouse for that other spouse's homestead interest. The homestead exemption was also the wife's entitlement prior to the time that the divorce was granted, a right which she had taken from her by the court and for which she was simultaneously awarded a judgment lien as compensation (citations omitted). *Id.* at 559.

## Bankruptcy Law

Debts for alimony and child support (and their equivalents) are not dischargeable in bankruptcy, but a debt for a property settlement is dischargeable. § 523. *See also* 3 *Collier on Bankruptcy* ¶ 523.15 (15th Ed.1988); *Stout v. Prussel,* 691 F.2d 859, 861 (9th Cir.1982).[4]

A debtor in bankruptcy may avoid a judicial lien on exempt property pursuant to § 522(f)(1), which reads:

> Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> (1) a judicial lien; ...

It is not uncommon for a divorce court to try to separate the warring parties as much as possible and, in this connection, award exempt property to Spouse A with a lien on the property in favor of Spouse B (to the extent of Spouse B's interest in the property at the time of divorce). If Spouse A subsequently files for bankruptcy and seeks to avoid the lien, bankruptcy courts are presented with substantial legal and policy conflicts. On one side stands the Congressional mandate that debts for property division are dischargeable in bankruptcy, and judicial liens on exempt property are avoidable pursuant to § 522(f)(1). Ranged on the opposite side are the federal judiciary's respect for the judgments of state courts, the feeling that a debtor (although deserving a fresh start) should not profit from a bankruptcy proceeding,[5] and the concern that Spouse B's future earning ability may not be as great as that of Spouse A. When faced with these disparate issues, it is not surprising that courts have reached different conclusions.

A lien is a "charge against or interest in property to secure payment of a debt or performance of an obligation." § 101(33).

A judicial lien means a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." § 101(32). A security agreement means an "agreement that creates or provides for a security interest." § 101(44). A security interest means a "lien created by an agreement." § 101(45).

## Courts Upholding the Liens

Courts which uphold the validity of judicial liens contained in divorce decrees have based their conclusions on a number of theories, including:

1. *Legislative intent.* Looking to legislative history, in *Hart v. Hart (In re Hart),* 50 B.R. 956 (Bankr.D.Nev.1985) the court determined that in passing § 522(f)(1) Congress intended to allow debtors to undo actions of creditors which were taken on the eve of bankruptcy, stating:

> Thus, Congress intended to permit the avoidance of creditors' liens obtained in the rush before bankruptcy when the liens attached *after* the debtor had already acquired his or her interest in the property and not in the same transaction or judicial proceeding which transferred the interest to the debtor. *Id.* at 961.

It is clear that Congress intended to include within the ambit of § 522(f)(1) only those lien interests created in favor of creditors, not spouses. *In re Thomas,* 32 B.R. 11 (Bankr.D.Or.1983).

2. *Vendor's Lien.* The *Thomas* Court stated:

> In a dissolution proceeding, the document which conveys one spouse's interest in the homestead to the other spouse simultaneously creates a lien in favor of the spouse who will no longer be allowed to live in the residence. In effect, the property is conveyed subject to a lien to secure payment of the non-resident spouse's share of the property settlement. *Thomas, supra,* at 12.

---

**4.** Rogers does not contend that the judgment awarded to her is alimony-substitute. *See Nunnally v. Nunnally (In re Nunnally),* 506 F.2d 1024 (5th Cir.1975); *Calhoun v. Calhoun (In re Calhoun),* 92 B.R. 686 (Bankr.W.D.Tex.1987).

**5.** This is also expressed by the sayings "a debtor should get a fresh start in a bankruptcy proceeding, but not a head start," and "bankruptcy should be used as a shield, but not as a sword."

The *Hart* Court, *supra,* stated that the judicial lien created is more in the nature of a purchase money obligation and could not be avoided for that reason.

3. *Consensual Lien.* Some courts have looked behind the decree of divorce and found an underlying property settlement agreement which grants the lien to protect a security interest on behalf of the debtor's ex-spouse. These courts conclude that the lien is consensual rather than judicial. *See Wicks v. Wicks (In re Wicks),* 26 B.R. 769, 771–72 (Bankr.D.Minn.1982), *aff'd sub. nom., Boyd v. Robinson (In re Boyd),* 741 F.2d 1112 (8th Cir.1984).[6]

4. *Pre–Existing Interest.* Some courts find that the judicial lien does not attach to an interest in the debtor's property. In *Boyd, supra,* the divorce court granted the husband a lien on the homestead for $7,000.00 representing equalization of the marital property. The wife filed for bankruptcy and sought to avoid the lien. Focusing on the portion of § 522(f) which relates to the "fixing of a lien on an interest of the debtor in property," the Eighth Circuit said:

> [W]e hold that the lien imposed by the state court does not attach to an interest of [the wife], but rather protects a pre-existing interest of [the husband] in the homestead that was created under Minnesota law prior to the marriage dissolution. Therefore, we hold that the lien is not avoidable under § 522(f)(1). *Id.* at 1113–1114.

*See also In re Alvarado,* 92 B.R. 923, 926 (Bankr.D.Kan.1988) (pre-existing theory explained). *Contra Maus v. Maus,* 837 F.2d 935, 939 (10th Cir.1988).

5. *Equitable Grounds.* Some courts simply state that to avoid such a lien is inequitable and should not be allowed. "To allow the debtor in this case to avoid the lien would result in unjust enrichment." *In re Maus,* 48 B.R. 948, 951 (Bankr.D. Kan.1985). However, the Circuit Court disagreed. *Maus v. Maus (In re Maus),* 837 F.2d 935 (10th Cir.1988) (affirming the district court's reversal of the bankruptcy court). In some cases equitable liens were imposed by courts when ex-spouses filed bankruptcy primarily to avoid compliance with the property division provisions of their divorce decrees. *Parker v. Donahue (In re Donahue),* 862 F.2d 259, 265–66 (10th Cir.1988). *Accord Hart, supra,* at 960–61. *Contra Maus,* 837 F.2d at 939–40, n. 5 (judicial lien only); *Boyd, supra,* at 1115 (Ross, J., dissenting); *RepublicBank, Lubbock, N.A. v. Daves (In re Daves),* 770 F.2d 1363, 1369 (5th Cir.1985) (no equitable lien on homestead without compliance with constitutional and statutory requirements).[7]

### Courts Avoiding the Liens

Courts which permit such liens to be avoided look to the Bankruptcy Code definition of a judicial lien as well as to the express language of § 522(f)(1). In *Maus,* 837 F.2d 935, the Tenth Circuit disagreed with the theory that the lien is to enforce a pre-existing interest in the property by virtue of the marital relationship when it noted that the decree gave one party title outright, and this is the interest to which the lien attached.

In *Pederson v. Stedman (In re Pederson),* 78 B.R. 264 (9th Cir. BAP 1987)[8] the Ninth Circuit Appellate Panel refused to follow *Boyd, supra,* and found that the lien could be avoided. The Panel pointed out the consistency of its decision with the Bankruptcy Code's allowance for the discharge of property settlement obligations

---

**6.** In *Wicks,* which was consolidated with *Boyd* for argument before the Eighth Circuit, the Circuit Court held the lien was not a judicial lien but was consensual. *Boyd's* lien was found by the Bankruptcy Court to be judicial. This determination was reversed by the District Court, which held the lien to be non-judicial. This result was affirmed by the Eighth Circuit, which held the lien to be non-avoidable due to its attachment to a pre-existing interest held by the Debtor's ex-spouse. *See* theory 4 *infra.*

**7.** The recent opinion in *Boyd v. Boyd (In re Boyd),* 93 B.R. 538 (Bankr.S.D.Tex.1988), which upheld a divorce court lien, is not applicable because the court pointed out that there was no attempt to avoid the lien pursuant to § 522(f).

**8.** Appealed to the Ninth Circuit No. 87–4319; argued February 6, 1989.

and disallowance for the discharge of alimony, child support or maintenance obligations. *See also Duncan v. Sczepanski (In re Duncan)*, 85 B.R. 80 (W.D.Wis.1988) (Judicial lien granted in divorce action is avoidable).

The courts avoiding these liens recognize the policy arguments against avoidance, but point out that it is not for the courts to make policy.

> [W]e recognize that our decision may produce questionable results in some circumstances. However, we agree with the district court's observation that the policy considerations at issue have been weighed by Congress and embodied in the language of the Bankruptcy Act. It is the prerogative of Congress and not of the courts to adjust that balance. *Maus*, 837 F.2d at 940.

One district court stated: "This Court declines to join the herd of prior courts who have trampled the Bankruptcy Code in a rush to achieve their own perception of justice in the divorce setting." *Duncan, supra*, 85 B.R. at 83.

### Is The Property Exempt?

Within thirty days after the *conclusion* of the meeting of creditors the trustee or any creditor may file objections to the list of property claimed as exempt. Bankruptcy Rule 4003(b). Although the Trustee did not file a report of the continued creditors' meeting held April 18, 1988, no objections to exemptions were filed. The Debtor did not claim a residential homestead. Under Texas law the Debtor is entitled to claim a business homestead in an urban area. Tex. Prop.Code Ann. § 41.002 (Vernon Supp. 1989). Under these circumstances, the Court assumes that the exemptions claimed should be allowed.

The debtor may avoid a judicial lien under § 522(f)(1) only "to the extent that such lien impairs an exemption to which the debtor would have been entitled...." The debtor elected the "state" exemptions under 522(b)(2)(A). Thus, the first inquiry must be whether the property claimed by the debtor as exempt should be allowed under Texas law.

The fact that no objections to the claimed exemptions were filed in the bankruptcy proceeding is not determinative. A creditor need not file an objection to an exemption claim in order to assert a lien on property which the debtor claims as exempt. *See 3 Collier on Bankruptcy* ¶ 522.27 (15th ed. 1987).

The homestead exemption as contained in Tex. Const. art. XVI § 50 (Vernon Supp. 1989) reads as follows:

> The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of both spouses, in the case of a family homestead, given in the same manner as is required in making a sale and conveyance of the homestead; nor may the owner or claimant of the property claimed as homestead, if married, sell or abandon the homestead without the consent of the other spouse, given in such manner as may be prescribed by law. No mortgage, trust deed, or other lien on the homestead shall ever be valid, except for the purchase money therefor, or improvements made thereon, as hereinbefore provided, whether such mortgage, or trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married. All pretended sales of the homestead involving any condition of defeasance shall be void.

These provisions are also contained in Tex.Prop.Code Ann. § 41.001(a) (Vernon Supp.1989), which states: "A homestead and one or more lots used for a place of burial of the dead are exempt from seizure for the claims of creditors except for encumbrances properly fixed on homestead property." Tex.Prop.Code Ann. § 41.001(b) (Vernon Supp.1989) contains a specific list of the permitted encumbrances,

which list follows the Constitutional mandate.

Under Texas law a homestead claimant may have either a rural or an urban homestead. Tex. Const. art. XVI § 51 (Vernon Supp.1989) provides: "... the homestead in a city, town or village, shall consist of lot or lots amounting to not more than one acre of land, together with any improvements on the land; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the homestead claimant...." This definition is codified at Tex.Prop.Code Ann. § 41.002 (Vernon Supp.1989).

Therefore we must inquire: Is the property exempt to the extent of the liens on it? This question was answered in the negative by the United States Court of Appeals for the Fifth Circuit in *Allen v. Hale County State Bank (In re Allen)*, 725 F.2d 290 (5th Cir.1984). *Allen* involved the construction of former Tex.Rev.Civ.Stat.Ann. art. 3836, which provided that certain personal property "is exempt from attachment, execution and every type of seizure for the satisfaction of liabilities, except for encumbrances properly fixed thereon...." *Id.* at 292 n. 1. The Court stated "[t]he Texas statute is specific, it does not exempt property subject to a secured lien." *Id.* at 293.[9] *Accord Bessent v. United States (In re Bessent)*, 831 F.2d 82 (5th Cir.1987)

The language in Tex.Prop.Code Ann. § 41.001(a) which states "except for encumbrances properly fixed on homestead property" is almost identical to the phrase "except for encumbrances properly fixed thereon" in former Article 3836—the phrase which the Fifth circuit construed in *Allen*. The language of art. XVI § 50 of the Texas Constitution is substantially the same when it exempts the homestead from forced sale "for the payment of all debts except for the purchase money thereof...."

As shown by the authorities cited above, Texas courts recognize the validity of a divorce court-mandated lien on the homestead as a purchase money lien (a vendor's lien). Under Texas community property law, the property is considered as owned during the marriage one-half by the husband and one-half by the wife. *Free v. Bland*, 369 U.S. 663, 664, 82 S.Ct. 1089, 1091, 8 L.Ed.2d 180 (1962); Tex.Fam.Code Ann. § 5.01(b) (Vernon 1975). Thus, it would seem that the lien should only apply to the one-half interest in the property which spouse B previously owned. *See McGoodwin v. McGoodwin*, 671 S.W.2d 880 (Tex.1984). However, that issue is not before this Court.

## CONCLUSION

Under Texas law, as interpreted in *Allen*, Accent Cleaners and the related property is not exempt to the Debtor insofar as there are valid liens on the property, including the lien held by Rogers. The Debtor's motion will be denied.

ORDER ACCORDINGLY.[10]

---

**9.** It would seem that the property may be claimed as exempt to the extent that the value of the property exceeds the amount owing on the properly fixed lien. *See In re Anthony*, 102 B.R. 600, 2 T.B.C.R. 280 (Bankr.S.D.Tex.1988).

**10.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052 which is made applicable to Contested Matters by Bankruptcy Rule 9014.